IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | |
|---|---|
| THE UNITED STATES OF AMERICA ex rel RED HAWK CONTRACTING, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )    1:16CV1183 ) |
| MSK CONSTRUCTION, INC., and ENDURANCE AMERICAN INSURANCE COMPANY, | ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Defendant MSK Construction, Inc.'s ("MSK") Motion to Dismiss or Stay Pursuant to the Federal Arbitration Act ("FAA"). (Doc. 19.) Plaintiff the United States of America, for the use and benefit of Red Hawk Contracting, Inc. ("Plaintiff") has responded. (Doc. 21.) No reply was filed, and the matter is now ripe for resolution. For the reasons stated herein, this court will grant in part and deny in part Defendant's motion.

### I.   BACKGROUND

Plaintiff's Complaint brings a breach of contract claim and, in the alternative, an unjust enrichment claim against MSK.

(Complaint ("Compl.") (Doc. 1) at 4-5, 7-8.) Plaintiff also asserts a claim under the Miller Act, 40 U.S.C. § 3131 et seq.,[1] against MSK and Defendant Endurance American Insurance Company ("Endurance") to enforce a claim on a payment bond executed between MSK and Endurance as surety, (Compl. (Doc. 1) at 5-7).

Plaintiff's claims arise out of a subcontract agreement between Plaintiff and MSK. (See id. at 2-4.) MSK was awarded a contract by the federal government for a Department of Veterans Affairs construction project in Durham, North Carolina. (See id. at 2; Compl., Ex. A (Doc. 1-2) at 1.) In connection with this project, MSK executed a subcontract with Plaintiff, (Compl., Ex. A (Doc. 1-2)), wherein MSK would pay Plaintiff $400,404.00 in exchange for Plaintiff performing a variety of services, including demolition, earthwork, and sewerage and drainage installation, (see id. at 2).

According to the Complaint, Plaintiff has fully performed according to the terms and conditions of the subcontract. (Compl. (Doc. 1) at 4, 6.) Plaintiff claims MSK breached the subcontract by failing to fully pay for materials, equipment, and labor; attempting to force Plaintiff to complete work

---

[1] Civil actions under the Miller Act are brought "in the name of the United States for the use of the person bringing the action." 40 U.S.C. § 3133(b)(3)(A).

outside the subcontract's scope; failing to maintain the project schedule; asserting wrongful back charges; and wrongfully terminating Plaintiff. (Id. at 4-5.) Plaintiff asserts that, after applying all payments and credit due, $80,180.90 is past due and owing under the subcontract. (Id.)

MSK, as principal, and Endurance, as surety, executed a Miller Act payment bond in connection with the contract between MSK and the federal government. Plaintiff contends that it has performed all conditions precedent to payment and that MSK and Endurance are jointly and severally liable for the amount claimed, with interests and costs allowable by statute. (Id. at 2, 6-7.)

MSK's[2] motion is based on an arbitration clause in the subcontract, including the following provisions:

> ARBITRATION: Subject to the requirements above, this AGREEMENT is subject to arbitration pursuant to S.C. Code Ann. §15-48-10, et. seq. [sic] All claims, disputes, or other matters in question arising out of, or relating to this AGREEMENT, the relationship of the parties hereto, the Project, the WORK, or the Contract Documents, including any breach thereof, shall, at either party's option, be fully and finally decided by arbitration. . . . Either party may join (by

---

[2] The motion appears to be brought solely by MSK but asserts that the action should be dismissed in its entirety "because each of Red Hawk's claims against MSK and Endurance . . . is subject to mandatory arbitration." (See Defendant MSK Construction, Inc.'s Memorandum of Law in Support of its Motion to Dismiss or Stay Pursuant to the Federal Arbitration Act (Doc. 20) at 5.)

> consolidation, joinder, or otherwise) such other
> entities or persons whom that party believes to be
> substantially involved in a common question of fact or
> law as may be at issue in the arbitration. However, in
> the event either party is for any reason unable to
> compel such entities or persons to participate in the
> arbitration, then either party may declare this
> arbitration provision absolutely null and void, and
> any pending arbitration shall be dismissed by the
> parties in favor of litigation in the courts. . . .
> The arbitration shall be conducted in Charleston,
> South Carolina. Any demand for arbitration hereunder
> shall be made in writing before the date when
> institution of legal or equitable proceedings based on
> such claim, dispute or other matter in question would
> be barred by the applicable statute of limitations or
> statute of repose.

(Compl., Ex. A (Doc. 1-2) at 15-16.) The subcontract also contains a provision stating that the agreement shall be governed by South Carolina law. (Id. at 15.) MSK asserts that the arbitration provisions deprive this court of subject matter jurisdiction over all of Plaintiff's claims, and that the Complaint should be dismissed under Federal Rule of Civil Procedure 12. (Defendant MSK's Memorandum of Law in Support of its Motion to Dismiss or Stay Pursuant to the Federal Arbitration Act ("Def.'s Br.") (Doc. 20) at 4-6.) Alternately, MSK asserts that if this court finds any of the claims not to be

arbitrable, that the court should stay the action until arbitration between Plaintiff and MSK is completed. (Id. at 6)[3]

## II. LEGAL STANDARD

MSK cites only to § 2 of the FAA, which provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Two other sections of the FAA are relevant: §§ 3 and 4 "provide[ ] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983)). While not specifically invoking either §§ 3 or 4 of the FAA, MSK's motion seeking enforcement of the arbitration agreement will nonetheless be construed as asking for both a

---

[3] MSK also contends in its answer that Plaintiff failed to agree to mediation as required by the subcontract and that the case should therefore be stayed. (Answer and Counterclaim of MSK Construction, Inc. (Doc. 16) at 6.) The fulfillment of a condition precedent to arbitrability is a question for the arbitrator, not the court, and so this court declines to address whether Plaintiff fulfilled this condition. See Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 565 (4th Cir. 2015) (citing BG Grp. PLC v. Republic of Argentina, ____ U.S. ____, ____, 134 S. Ct. 1198, 1207–08 (2014)).

stay and an order compelling arbitration. See Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 698 (4th Cir. 2012) (favoring "substance rather than nomenclature" in determining whether movant adequately invoked the FAA's remedies).

In determining whether a stay of litigation is required under § 3, courts must "engage in a limited review to ensure that the dispute is arbitrable — i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301-02 (4th Cir. 2002) (citation omitted).

To compel arbitration under § 4, a litigant must show "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002) (citation omitted). Dismissal may be appropriate if all claims asserted in a complaint are subject to arbitration. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

## III. ANALYSIS

Plaintiff concedes that the underlying dispute falls within the scope of the arbitration agreement. (Plaintiff's Response to Defendant MSK's Motion to Dismiss or Stay Pursuant to the Federal Arbitration Act ("Pl.'s Resp. Br.") (Doc. 21 at 2) ("After the dispute . . . arose, Red Hawk did not commence arbitration proceeding in South Carolina, as required under the Subcontract.").) However, Plaintiff claims that the arbitration agreement is voided by N.C. Gen. Stat. § 22B-2, which relates to improvements to real property in North Carolina. (Id. at 6.) Plaintiff argues that the FAA does not preempt § 22B-2 because the transaction (that is, the subcontract between Plaintiff and MSK) bears no relation to interstate commerce and thus is not governed by the FAA. (Id. at 4-5.) Alternatively, Plaintiff argues that the arbitration clause should be rendered void on equitable grounds because Plaintiff would be inconvenienced by litigating separate actions against MSK and Endurance. (Id. at 3-4.) Finally, Plaintiff argues that the claim against Endurance should be allowed to proceed even if its claims against MSK are staying pending arbitration. (Id. at 4.) Each argument is addressed in turn.

## A. <u>Applicability of the FAA</u>

To evaluate Plaintiff's argument that North Carolina law voids the arbitration agreement, this court must first determine whether North Carolina law or the FAA applies. The FAA applies to written provisions in "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has

> interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" - words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" - that is, "within the flow of interstate commerce."

<u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56 (2003) (per curiam) (citations omitted). While diversity of citizenship alone is insufficient to invoke the FAA, nor does the FAA "require proof by affidavit or other specific evidence of the nexus to interstate commerce." See <u>Maxum Founds., Inc. v. Salus Corp.</u>, 779 F.2d 974, 978 n.4 (4th Cir. 1985). "Where . . . the party seeking arbitration alleges that the transaction is within the scope of the Act, and the party opposing application of the Act does not come forward with evidence to rebut jurisdiction," no further proof is required for a court to conclude the transaction evidences interstate commerce. <u>Id.</u> A specific effect

on interstate commerce does not need to be identified as long as "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" Rota-McLarty, 700 F.3d at 697–98 (quoting Citizens Bank, 539 U.S. at 56–57).

Here, MSK alleges that the transaction is subject to the FAA because "the parties are of diverse citizenship." (Def.'s Br. (Doc. 20) at 6.) Plaintiff, a North Carolina corporation, offers no evidence to rebut jurisdiction but claims that the transaction is not within the FAA's scope because MSK's status as a North Carolina licensed general contractor means that the contractual relationship was one of intrastate commerce. (Compl. (Doc. 1) at 1; Pl.'s Resp. Br. (Doc. 21) at 5.)

Although MSK incorrectly assumes that diversity of citizenship is sufficient to invoke the FAA, this court still agrees that the transaction evidences a relationship to interstate commerce. MSK remains a South Carolina corporation with its principal place of business in Charleston, South Carolina. (Compl. (Doc. 1) at 1.) The contract was "made and entered into" in South Carolina. (Compl., Ex. A (Doc. 1-2) at 1.) MSK's surety is a publicly held Delaware corporation. (Compl. (Doc. 1) at 1; see also Disclosure of Corporate, Affiliations and Other Entities with a Direct Financial Interest

in Litigation (Doc. 11).) The subcontract specifies methods for transferring money from MSK — presumably from its principle place of business in South Carolina, as the subcontract does not describe MSK as having any other place of business — through the mail to Plaintiff in North Carolina and notes that Plaintiff must submit monthly billing and receipts to MSK. (Compl., Ex. A (Doc. 1-2) at 3.) The "multistate nature" of MSK's business is itself evidence of a transaction involving interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 282 (1995). Therefore, the FAA applies.

**B.   Applicability of North Carolina law**

The parties next dispute whether the FAA specifically preempts N.C. Gen. Stat. § 22B-2. Only "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). The FAA will preempt contravening state law. See id. at 688.

Under § 22B-2,

> A provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws of another state, or provides that the exclusive forum

> for any litigation, arbitration, or other dispute resolution process is located in another state.

N.C. Gen. Stat. § 22B-2. Several district courts have examined § 22B-2, reasoning that the statute invalidates only certain provisions in a narrow subset of contractual agreements. Thus, § 22B-2 is not generally applicable and, as applied to arbitration agreements, directly conflicts with and is preempted by the FAA. See United States ex rel. TGK Enters., Inc. v. Clayco, Inc., 978 F. Supp. 2d 540, 549 (E.D.N.C. 2013); S. Concrete Prods., Inc. v. ARCO Design/Build, Inc., Civil No. 1:11CV194, 2012 WL 1067906, at *6 (W.D.N.C. Mar. 29, 2012); Wake Cty. Bd. of Educ. v. Dow Roofing Sys., LLC, 792 F. Supp. 2d 897, 901–02 (E.D.N.C. 2011). This court adopts the reasoning of those courts. Accordingly, this court finds that § 22B-2 is preempted by the FAA in this case and cannot be a basis to void the arbitration clause.[4]

---

[4] In its response to MSK's counterclaim, Plaintiff also claims that N.C. Gen. Stat. § 22B-3 voids the arbitration clause. (Reply to MSK Construction, Inc.'s Counterclaim (Doc. 18) at 3.) Assuming Plaintiff properly raised this issue in its response to the present motion, the result would be unchanged because § 22B-3 is also preempted by the FAA. See, e.g., United States ex rel. TGK Enters., Inc. v. Clayco, Inc., 978 F. Supp. 2d 540, 547-49 (E.D.N.C. 2013); Newman ex rel. Wallace v. First Atl. Res. Corp., 170 F. Supp. 2d 585, 593 (M.D.N.C. 2001).

**C. Inconvenience**

Next, Plaintiff argues that the arbitration clause should be rendered void because Endurance "is a necessary party to this action and it would be inconvenient for Plaintiff to be forced to engage in separate legal actions against each Defendant." (Pl.'s Resp. Br. (Doc. 21) at 3.)

The inconvenience of Plaintiff having to engage in separate actions is not sufficient to void an otherwise valid arbitration agreement. See Moses H. Cone Mem'l Hosp., 460 U.S. at 20 ("[T]he relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. Under the [FAA], an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." (footnotes omitted)). Therefore, Plaintiff's argument that equity requires the arbitration clause to be voided for its convenience fails.

**D. Stay Pending Arbitration**

First, this court notes that § 3's "stay-of-litigation provision is mandatory" for issues referable to arbitration. Adkins, 303 F.3d at 500. Plaintiff's claims against MSK are referable to arbitration for the reasons described above and therefore must be stayed pending arbitration.

As to Plaintiff's Miller Act claim against Endurance, MSK argues that the arbitration clause's broad language encompasses all counts of Plaintiff's Complaint, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and the Complaint should therefore be dismissed. (See Def.'s Br. (Doc. 20) at 5-6 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.) Plaintiff argues, without citation, that because its relationship with Endurance "is not governed by the Subcontract," its Miller Act claim against Endurance should be permitted to proceed even if litigation between Plaintiff and MSK is stayed. (Pl.'s Resp. Br. (Doc. 21) at 4.)

While the language in the arbitration clause is broad, this court is not convinced that Plaintiff's Miller Act claim against Endurance falls within its scope. Endurance is not a party to the subcontract. While courts have recognized several theories under which nonsignatories may be bound to the contractual agreements of others, including arbitration agreements, see, e.g., Bartels ex rel. Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 679–80 (4th Cir. 2018), the parties do not assert that any of those theories apply here.

While it appears that Plaintiff's Miller Act claim against Endurance is not itself arbitrable, "[w]hen arbitration is likely to settle questions of fact pertinent to nonarbitrable

- 13 -

claims, 'considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action.'" Am. Heart Disease Prevention Found., Inc. v. Hughey, 106 F.3d 389 (4th Cir. 1997) (unpublished table decision), 1997 WL 42714, at *6 (quoting Am. Home Assurance Co. v. Vecco Concrete Constr. Co. of Va., 629 F.2d 961, 964 (4th Cir. 1980)). Because determining the extent of Endurance's liability to Plaintiff will rely on common issues of fact to be settled during the arbitration, this court finds that, in the interest of judicial economy, the entire action should be stayed until arbitration is had in accordance with the agreement. See United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co., 349 F. Supp. 2d 934, 941–42 (D. Md. 2004) (citation omitted) (discussing courts' resolution of the "tension between the Miller Act and the [FAA] by staying the Miller Act claim pending arbitration of the underlying dispute"); see also Agostini Bros. Bldg. Corp. v. United States ex rel. Virginia-Carolina Elec. Works, Inc., 142 F.2d 854, 856-57 (4th Cir. 1944) (reversing district court's denial of stay of Miller Act claim pending arbitration proceedings); Developers Sur. & Indem. Co. v. Carothers Constr., Inc., Civil Action No. 9:17-1419-RMG, 2017 WL 3054646, at *3 (D.S.C. July 18, 2017) (discussing obligations of a surety under South Carolina law).

### E. Compelling Arbitration

To the extent that MSK's motion may be construed as asking this court to compel arbitration, the motion will be denied. Section 4 provides that in granting a motion to compel arbitration, "[t]he hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. "A majority of courts interpreting this provision have held that 'where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4.'" TGK Enters., 978 F. Supp. 2d at 551 (quoting Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1219–20 (10th Cir. 2005) (collecting cases)). The subcontract provides that arbitration shall be conducted in Charleston, South Carolina, which is in the District of South Carolina. Having determined that this court cannot order arbitration to be had in the District of South Carolina, this court finds it sufficient to stay the action until arbitration is had in accordance to the terms of the agreement.

### IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Defendant MSK's Motion to Dismiss or Stay Pursuant to the Federal Arbitration Act (Doc. 19) is **GRANTED IN PART** and **DENIED**

**IN PART** in that Defendant's motion to dismiss is **DENIED** and Defendant's motion to stay this action is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **STAYED** until arbitration has been had in accordance with the terms of the parties' arbitration agreement. To the extent that Defendant's motion seeks to compel arbitration, **IT IS DENIED**.

The Clerk shall mark this case as inactive. Within 30 days of completion of arbitration, the parties shall file a joint report advising the court of completion of the arbitration and whether further proceedings in this court are required.

This the 8th day of May, 2018.

/s/ William L. Osteen, Jr.
United States District Judge